***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Ledford with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The employee is Shirlee O. Moore.
2. The employer is HFH, Inc.
3. The carrier on risk is ACE USA/ESIS.
4. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between the employer and the employee on or about April 18, 2006, the date of the alleged compensable injury reflected on I.C. File Number 620077.
5. Plaintiff has been out of work since April 18, 2007.
6. Subsequent to the evidenitary hearing, the parties submitted the following documents, which are received as evidence:
 a. A Form 22 Wage Chart (received with cover letter of defense counsel dated July 16, 2007).
 b. Medical records (received with cover letter of plaintiff's counsel dated January 8, 2008). ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the evidentiary hearing, plaintiff was thirty-eight years old, with a birth date of June 28, 1968. Plaintiff has a high school diploma and completed some college course work. *Page 3 
2. Plaintiff was hired by defendant-employer in February of 2006, at a wage rate of $500.00 per week. Plaintiff's job duties involved picking up, and sometimes loading, packages of varying weights and sizes from one location and delivering them to another location.
3. On April 18, 2006, plaintiff suffered an admittedly compensable injury to her back while attempting to reposition a headboard inside of the delivery truck. After such injury, plaintiff completed the remainder of her shift, which involved loading and delivering one shipment from a medical supply company and two shipments from Tyco. Defendants accepted the claim that plaintiff sustained a compensable injury by accident but denied any disability as a result thereof on a Form 61, dated June 15, 2006.
4. On April 19, 2006, plaintiff presented to Urgent Care for treatment but was turned away as she did not have authorization from defendant-employer. Plaintiff therefore presented for work and completed a delivery.
5. After speaking with her employer, that same day, April 19, plaintiff sought treatment at MedCentral in High Point. Plaintiff was seen by Dr. Stuart Kossover. His physical examination revealed tenderness over plaintiff's lumbar spine. Dr. Kossover took plaintiff out of work on that date. X-rays of the spine were normal.
6. Plaintiff returned to MedCentral on April 21, 2006. She saw Dr. Wendy Mason, who kept plaintiff out of work until April 24, 2006. When plaintiff returned to see Dr. Kossover on April 24, 2006, Dr. Kossover allowed her to return to work with restrictions. Those restrictions limited her to a sedentary job with frequent standing breaks and specifically stated that she could not be a passenger in a truck. *Page 4 
7. Dr. Kossover documented contact with defendant-employer on April 24, 2006. Per his testimony, Dr. Kossover placed the call to defendant-employer to get authorization for plaintiff to have an MRI.
8. On April 29, 2006, plaintiff underwent a lumbar MRI, which was normal. Per Dr. Kossover the MRI did not show anything significant. On that date, Dr. Kossover removed the restriction against driving and being a passenger, leaving effective work restrictions of sitting work only with no prolonged standing or walking with frequent standing periods.
9. On or about May 1, 2006, defendant-employer contacted plaintiff and left messages requesting that she contact them to discuss returning to light-duty employment. Defendant-employer had two light duty jobs available to plaintiff as of May 1, 2006.
10. The first available light duty job was a navigator position in which plaintiff would ride as a passenger and read maps to help the driver set up the most efficient route. Other employees had performed the navigator position duties prior to it being made available to plaintiff.
11. The second available light duty job was a dispatcher position in which plaintiff would sit at the call center and answer calls from drivers requesting assistance and/or information. At the time of the evidentiary hearing, there was an employee on payroll performing this position.
12. Plaintiff did not return the messages of May 1, 2006. Rather, on May 4, 2006, plaintiff contacted Dr. Kossover, attempting to have her work restrictions modified to be more restrictive. While plaintiff did not feel she was physically capable of working, her physicians did not amend her work restrictions. *Page 5 
13. On May 3, 2006, Dr. Mason of MedCentral clarified plaintiff's work restrictions, confirming that she could be a passenger in a truck but may not drive. Dr. Mason further clarified that plaintiff was restricted to sitting work only with frequent standing breaks and no repetitive bending, stooping, kneeling, squatting, pushing, pulling or lifting over ten pounds.
14. On May 4, 2006, defendant-employer sent plaintiff a certified letter informing her that light duty work within her restrictions was available and asking that she contact them to discuss these positions. Plaintiff initially admitted that she received the letter but immediately thereafter testified that she did not remember receiving it. Ultimately, plaintiff's counsel stipulated to plaintiff's receipt of the letter.
15. Plaintiff did not contact defendant-employer following her receipt of the May 4, 2006 letter or otherwise attempt to return to work with defendant-employer or any other employer.
16. On or about May 4, 2006, Dr. Kossover spoke with Tracy McMillard with defendant-employer. It appears this phone call was initiated by Ms. McMillard. Ms. McMillard made inappropriate comments to Dr. Kossover, stating that defendant-employer could accommodate plaintiff at work, but that plaintiff was not showing up. However, Dr. Kossover was adamant in his testimony that these inappropriate comments had no influence on him in assessing plaintiff's condition or restrictions.
17. Plaintiff did not present for her follow-up appointment with Dr. Mason scheduled for May 12, 2006. She did not present for any further treatment with Dr. Mason on any date thereafter, although the same was authorized. *Page 6 
18. When plaintiff had missed her appointment and had not returned for treatment in over 6 weeks, as of June 15, 2006, Dr. Kossover assumed that plaintiff's condition had resolved. He therefore released her to full duty work without restrictions retroactive to May 12, 2006.
19. Plaintiff underwent an independent medical examination on December 5, 2006, performed by Dr. Frank J. Rowan. In addition to performing a physical examination, Dr. Rowan reviewed plaintiff's medical records. Dr. Rowan opined that the April 29, 2006 lumbar MRI results and diagnosis of facet arthritis were normal for someone of plaintiff's age.
20. With respect to his physical examination of plaintiff, Dr. Rowan noted that her pain seemed grossly out of proportion to any objective physical findings. Based on such inconsistent presentation, Dr. Rowan referred plaintiff for a functional capacity evaluation (FCE) to see if she would exhibit similar inconsistent behavior.
21. On April 27, 2007, plaintiff underwent the recommended FCE. Such study revealed four of five Waddell signs. With respect to such finding Dr. Rowan testified, "specifically the Waddell signs, and if they come up with, you know, three of five, four of five, five of five Waddell signs, most people say that's evidence of pain that is nonorganic in nature; in other words, there's no structural lesion."
22. In Dr. Rowan's opinion, plaintiff has reached maximum medical improvement with a zero percent (0%) impairment rating to the back. Dr. Rowan further opined that plaintiff could return to work in a sedentary capacity with lifting up to five pounds frequently and ten pounds occasionally.
23. Plaintiff underwent a second independent medical examination on August 30, 2007 performed by Dr. T. Craig Derian. During physical examination, Dr. Derian found some degree of inappropriate illness behavior. Dr. Derian further noted varied results with strength *Page 7 
testing of the lower extremities ultimately leading to his conclusion that plaintiff had normal strength. Notwithstanding, Dr. Derian diagnosed plaintiff with a symptomatic posterior annular tear at L5-S1 secondary to degeneration.
24. Dr. Derian opined that plaintiff currently requires work restrictions of light-duty sedentary type work with no lifting over ten pounds and allowed frequent changes of position. Absent further testing and consideration for surgery, Dr. Derian testified that plaintiff had reached maximum medical improvement retaining a ten percent (10%) permanent partial impairment to the back.
25. In weighing the medical testimony, the undersigned finds that, per the opinion of Dr. Rowan, Plaintiff has a zero percent (0%) permanent impairment to her back due to her work injury of April 18, 2006. As shown by the testimony of all three testifying physicians, plaintiff is capable of sedentary work, with restrictions of lifting up to five pounds frequently and ten pounds occasionally, and frequent position changes.
26. The undersigned does not find plaintiff's testimony credible and gives her testimony less weight than that of Mr. Kenneth Licorish. Per Mr. Licorish, plaintiff was offered both the navigator and dispatcher positions, on May 1, 2006 and again on May 4, 2006. At the time such positions were offered, each was within the work restrictions imposed by her authorized treating physicians and each constituted suitable employment.
27. As of April 25, 2006, plaintiff was able to return to work in a light duty capacity, per the release from Dr. Kossover the day before. By May 4, 2006, plaintiff had been notified that defendant-employer had suitable employment available. Plaintiff failed to follow-up with her defendant-employer for the positions being offered. *Page 8 
28. Plaintiff has failed to seek any employment within her restrictions. Plaintiff has failed to produce any evidence that such a search would be futile.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident to her back on April 18, 2006. N.C. Gen. Stat. § 97-2(6).
2. Defendants are required to provide plaintiff with reasonably necessary medical treatment related to her compensable back injury that tends to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25, and 97-25.1.
3. Per the recommendations of the treating physicians, plaintiff was unable to return to work and was temporarily totally disabled from April 18 through 24, 2006, a period of seven days. As of May 4, 2006, per telephone call and letter, defendant-employer had offered plaintiff suitable employment, which she refused. Plaintiff would only be entitled to ten days of compensation for total disability, (April 25, 2006 through May 4, 2006) following the seven-day waiting period. N.C. Gen. Stat. §§ 97-28, 97-29.
4. To obtain an award for disability, a claimant must establish that the condition resulted in disability. Plaintiff may establish disability in one of four ways: (1) the production of medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment; (3) the production of evidence that she is capable of some work but that it *Page 9 
would be futile because of preexisting conditions to seek other employment; or (4) the production of evidence that she has obtained other employment at a wage less than that earned prior to the injury. Russellv. Lowes Prod. Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. Even if disability is established, if an employer shows that the claimant has unjustifiably refused employment obtained for the employee that is suitable to the claimant's capacity and the evidence is accepted by the Industrial Commission, the claimant is not entitled to any benefits. N.C. Gen. Stat. § 97-32. Franklin v. Broyhill Furn. Indus.,123 N.C. App. 200, 472 S.E. 2d 382 (1996)
6. In the case at hand, subsequent to her release to light duty employment on April 25, 2006, plaintiff failed to present competent and credible evidence establishing ongoing disability. Russell v. LowesProd. Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993).
7. Assuming arguendo that plaintiff proved disability after April 25, 2006, plaintiff refused suitable employment by failing to respond to defendant-employer's telephone calls of May 1, 2006 and follow-up letter of May 4, 2006 offering light duty employment within her capacity. As such positions remained suitable for plaintiff, her refusal of the same continues to be unjustified up through the filing of the Full Commission Opinion and Award. N.C. Gen. Stat. § 97-32.
8. Plaintiff sustained no permanent partial impairment to her back as a result of the April 18, 2006, incident. N.C. Gen. Stat. § 97-31 (23).
9. Plaintiff's average weekly wage was $505, yielding a compensation rate of $336.68. N.C. Gen. Stat. § 97-2.
 *********** *Page 10 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred or to be incurred resulting from plaintiff's compensable back injury as long as it tends to effect a cure, provide relief, or lessen the period of disability.
2. Defendants shall pay plaintiff temporary total disability compensation at the rate of $336.68 per week for ten days of total disability for the period after the seven-day waiting period and prior to the defendant-employer's written offer of suitable employment of May 4, 2006.
3. Plaintiff's claim for indemnity benefits from May 4, 2006 through the date of the filing of this Opinion and Award is hereby denied.
 4. Each side shall pay its costs.
 This the 16th day of December, 2008.
 S/___________________
 DIANNE C. SELLERS
 COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ BUCK LATTIMORE COMMISSIONER *Page 1